IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| GAIL LYNN CRABBE,<br><br>        Plaintiff,<br><br>v.<br><br>DARLENE NAKAYAMA,<br>PALOLO CHINESE HOME, *et al.*,<br><br>        Defendants. | Case No. 18-cv-00418-DKW-KJM<br><br>**ORDER (1) GRANTING APPLICATION TO PROCEED WITHOUT PREPAYMENT OF FEES OR COSTS; (2) DISMISSING COMPLAINT WITH PARTIAL LEAVE TO AMEND; (3) DENYING AS MOOT MOTION FOR APPOINTMENT OF COUNSEL; AND (4) DENYING AMENDED MOTION FOR APPOINTMENT OF COUNSEL.**[1] |

      On October 30, 2018, Plaintiff Gail Lynn Crabbe, proceeding pro se, filed a

Complaint against Palolo Chinese Home (Palolo) as well as numerous individuals

who appear to be past or present employees and/or members of the board of directors

of Palolo ("the individual defendants," and, collectively with Palolo, "Defendants").

Dkt. No. 1.   Crabbe also filed an application to proceed *in forma pauperis* ("IFP

Application") and an amended motion for appointment of counsel.   Dkt. Nos. 2, 8.[2]

---

[1] Pursuant to Local Rule 7.2(d), the Court finds these matters suitable for disposition without a hearing.

[2] In light of the amended motion for appointment of counsel, Crabbe's initial motion for appointment of counsel, Dkt. No. 3, is DENIED AS MOOT.

## I.    Crabbe's IFP Application

Federal courts can authorize the commencement of any suit without prepayment of fees or security by a person who submits an affidavit that demonstrates an inability to pay.   *See* 28 U.S.C. § 1915(a)(1).   While Section 1915(a) does not require a litigant to demonstrate absolute destitution, *Adkins v. E.I. Du Pont de Nemours & Co.*, 335 U.S. 331, 339 (1948), the applicant must nonetheless show that she is "unable to pay such fees or give security therefor," 28 U.S.C. § 1915(a).

In the IFP Application, Crabbe states that she has earned $14,824 in the last 12 months—an amount that appears to consist mostly of disability insurance payments, which ended in February 2018.   She states that she filed for social security in July 2018, and, since August 2018, she has received $1,472 per month therefrom.   She expects to receive $1,472 in social security every month going forward.   Further, Crabbe states that she has minus $37.11 in a checking or savings account and owns two automobiles bought for $1,500 and $500 respectively.   Crabbe also states that she has "cashed out" a pension and an annuity totaling more than $45,000, but, elsewhere in her filings, she says that "there is no money left from catching up after my husband was laid off for several months."   *See* Decl. in Support of IFP Application at 2, Dkt. No. 9.   Further, Crabbe states that she has regular monthly expenses of $940 for health insurance and an undisclosed amount that she and her

husband pay in food for her son. Crabbe also asserts that her husband pays their $2,000 rent and utility bill, gasoline, co-pays for medical appointments, and medications. Further, Crabbe states that she owes $2,400 to a doctor.

In light of Crabbe's assertions in her IFP Application and supporting declaration, the Court finds that she has shown an inability to pay the $400 filing fee while still affording the necessities of life. *See Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015). In addition, on the present record, Crabbe has insufficient assets to provide security. As a result, the Court GRANTS the IFP Application, Dkt. No. 2.

## II.     Screening of Crabbe's Complaint

The Court subjects each civil action commenced pursuant to 28 U.S.C. § 1915(a) to mandatory screening and can order the dismissal of any claims it finds "frivolous, malicious, failing to state a claim upon which relief may be granted, or seeking monetary relief from a defendant immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In doing so, the Court liberally construes a pro se Complaint. *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987). However, the Court cannot act as counsel for a pro se litigant or supply the essential elements of a claim. *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

## A.    The Complaint

In her Complaint, Crabbe brings at least one claim of employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII). Crabbe also appears to bring a claim of disability discrimination under the Americans with Disabilities Act (ADA) and, arguably, a claim of age discrimination and a claim concerning Family and Medical Leave Act (FMLA) leave.

Before getting to Crabbe's factual allegations, the Court addresses a preliminary matter.   In the Complaint, Crabbe names approximately 20 individuals as defendants.   All of these individuals appear to be connected to Palolo, mostly as members of the entity's board of directors, but also possibly as employees.   Putting aside for now that Crabbe does not allege that any of the individual defendants committed any of the acts alleged in the Complaint, even if she did, she cannot maintain a cause of action against an individual under Title VII, the ADA, or the Age Discrimination in Employment Act (ADEA).[3]   *See Miller v. Maxwell's Int'l, Inc.*, 991 F.2d 583, 587-588 (9th Cir. 1993) (concluding that there is no individual liability under Title VII and the ADEA); *Link v. Rhodes*, 2006 WL 1348424, at *5 (N.D. Cal. May 17, 2006) (dismissing with prejudice ADA claims brought against individual defendants because there is no individual liability under the ADA); *McClelland v. Nev. Dep't of Prisons*, 1994 WL 497545, at *1-3 (D. Nev. Aug. 29,

---

[3]Although Crabbe asserts in the Complaint that she was discriminated against due to her age, she does not state under what law she brings such a claim.   For present purposes, the Court assumes it is the ADEA.

1994) (explaining that, because the ADA adopts the remedy provisions of Title VII and the Ninth Circuit has concluded that individuals are not liable under Title VII, individuals are not liable under the ADA).

As a result, Crabbe's claims against the individual defendants are DISMISSED WITH PREJUDICE because amendment cannot remedy the above-stated deficiency with those claims. To the extent Crabbe files an amended complaint, she may not bring any claims against an individual under Title VII, the ADA, or the ADEA.[4]

The Court now turns to the claims against Palolo. Crabbe makes the following factual allegations. Crabbe worked alone for 5 years, doing social services for 61 patients.[5] During this five-year period, Crabbe had a private office to counsel families. Crabbe says that being in a private office "worked fine" for her because she has to wear hearing aids. At some point in early 2017, Crabbe returned to work after taking FMLA leave. In late 2017, it appears that "a new building plus 50 patients were added" to her duties. At this time, it also appears that a second "social service[s] coordinator" was hired, and they both were given multiple new, but unidentified, duties. Supervisors gave assistance to a "younger Filipino," but

---

[4]The Court addresses the FMLA later in this Order.
[5]In her Complaint, Crabbe does not appear to allege either her job title or her employer. In the Equal Employment Opportunity Commission (EEOC) Charge of Discrimination attached to her Complaint, though, it states that Crabbe's employer was Palolo, and her job title was "social services coordinator." The Court assumes as such herein.

did not do so for Crabbe.[6]   In addition, Crabbe's work increased "over 45%," and

she was placed in an office with 3 other people.   Crabbe could not hear her

clients/vendors on the telephone in this office.   At some point, Crabbe was ridiculed

in a meeting because she could not hear and mixed-up patients.   An administrator

suggested that she wear ear muffs.   Crabbe was also told to work an extra day each

week with no increase in her pay.

On an unspecified date, Crabbe was forced to go to an unscheduled meeting at

the same time that she should have been at her important weekly team meeting.

While she was running between buildings (presumably, to get from one meeting to

another), Crabbe fell on the concrete.   She suffered "[m]ild" physical injury, but

"extensive" psychological injury making her unable to work.   A workers'

compensation claim for a "fall" she suffered has still not been processed.[7]

Unidentified people continued to harass Crabbe on a monthly basis by letter, and she

was fired (on an unspecified date) before returning to work.   Crabbe appears to

allege she was fired for faxing a doctor's statement to a disconnected fax machine.

### B.   Title VII

Title VII prohibits refusing to hire or discharging any individual on the bases

of race, color, religion, sex, or national origin.   42 U.S.C. § 2000e-2(a)(1).

---

[6]It is not clear whether the "younger Filipino" was the second social services coordinator Palolo
allegedly hired.   Given that Crabbe alleges that the "younger Filipino" was "similar[ly] situated"
to her, though, the Court assumes so.

[7]It is not clear whether the worker's compensation "fall" is the same fall as the one that occurred
while Crabbe was trying to get from one meeting to another.

Title VII has also been construed as prohibiting harassment that is so severe or pervasive that it creates a hostile work environment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66-67 (1986). Here, Crabbe appears to rely upon race and, arguably, hostile work environment. The Court addresses both.

### Race Discrimination

To set forth a prima facie case of race discrimination under Title VII, an employee must allege that (1) she is a member of a protected class, (2) she performed her job adequately, (3) she suffered an adverse employment action, and (4) she was treated differently than a similarly situated employee who was not a member of her protected class. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006).

Here, Crabbe alleges that she is Caucasian, which is a protected class. Crabbe also alleges that she was terminated, which is an adverse employment action. Crabbe may also allege other adverse employment actions. For instance, she alleges her workload was increased over 45%, she was told to work an extra day with no increase in pay, and her workers' compensation claim has not been processed even though her injury occurred over a year ago. Arguably, these are adverse employment actions. *See Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (stating that "assigning more, or more burdensome, work responsibilities, is an adverse employment action"); *cf. Brooks v. City of San Mateo*,

229 F.3d 917, 929 (9th Cir. 2000) (concluding that an employer using "all of its allotted 90 days to process the worker's compensation claim" could not constitute an adverse action where the plaintiff failed to show that the employer treated other employees differently).

There is no mention in the Complaint, though, of how Crabbe was performing in her job, whether adequately or otherwise. With respect to the final element of a prima facie race discrimination claim, Crabbe alleges that a "younger Filipino" was given assistance by supervisors while Crabbe was not. For present purposes, the Court assumes that Crabbe has alleged that her colleague was not a member of her protected class.[8] Crabbe's allegation, though, is simply too vague to assume either that she was treated differently or that she was similarly situated to her colleague. Other than appearing to allege that her colleague was also a social services coordinator, Crabbe provides no explanation for how they were similarly situated. As for different treatment, Crabbe provides no explanation of what "assistance" her colleague was provided. Notably in that regard, Crabbe appears to allege that the second social services coordinator was hired in 2017. If that is the case, there could be a very good reason why the newly-hired coordinator was given assistance while Crabbe, who had worked in social services for at least five years, was not.

---

[8] *See Village of Freeport v. Barrella*, 814 F.3d 594, 607 (2d Cir. 2016) (holding that "discrimination based on ethnicity … constitutes racial discrimination under Title VII.").

As a result, Crabbe's claim of race discrimination is DISMIISSED

WITHOUT PREJUDICE.   Crabbe may file an amended complaint that addresses

the deficiencies in her race discrimination claim, described above.   Should Crabbe

do so, she must allege, for instance, whether she was adequately performing her job

at the time of her termination.   She must further allege facts supporting her

conclusory assertion that she and her "younger Filipino" colleague were similarly

situated.   In addition, so this claim is clearer, Crabbe should attempt to identify the

assistance her colleague was given.

**Hostile Work Environment**

A hostile work environment claim under Title VII can be premised upon race.

*Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003).   Such a claim

requires a plaintiff to show that (1) she was subjected to verbal or physical conduct

of a racial nature, (2) the conduct was unwelcome, and (3) "the conduct was

sufficiently severe or pervasive to alter the conditions of the plaintiff's employment

and create an abusive work environment."   *Id*.

Here, it is far from clear whether Crabbe intends to allege a hostile work

environment claim.   Out of an abundance of caution, however, the Court notes the

following deficiencies with any such claim.   Notably, although Crabbe asserts that

she was "harassed," that is all she says.   For instance, Crabbe alleges she was

"harassed by CEO's secretary" and she received "harassing letters" every month

from unidentified sender(s). Merely throwing some derivation of the word "harass" into a sentence, though, does not advance any claim, as conclusory statements do not suffice. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). More important, to the extent Crabbe intends to allege a hostile work environment claim, she must place the treatment and letters she allegedly received in some factual context. Such as what the CEO's secretary allegedly said to her and how often, and what the alleged letters said and whom they were from. Otherwise, it will be impossible to assess whether the alleged conduct was of a racial nature and whether it was sufficiently severe or pervasive to alter the conditions of her employment.

As a result, to the extent Crabbe alleges a hostile work environment claim under Title VII, it is DISMISSED WITHOUT PREJUDICE. To the extent Crabbe files an amended complaint, she must clearly state whether she is bringing a hostile work environment claim under Title VII (or any other law). In addition, if Crabbe intends to bring such a claim, she must address the deficiencies discussed in the previous paragraph. Failure to do so may result in dismissal of any hostile work environment claim under Title VII without further leave to amend.

### C.   ADA

The ADA prohibits certain employers from discriminating against a "qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee

compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Discrimination under the ADA includes the failure to make a "reasonable accommodation" unless the employer can demonstrate that the accommodation would impose an "undue hardship" on its business. *Id*. § 12112(b)(5)(A).[9]

Under the ADA, Crabbe bears the burden of proving that (1) she is disabled within the meaning of the statute, (2) she is a "qualified individual" under the statute, and (3) she was discriminated against because of her disability. *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 988 (9th Cir. 2007) (en banc).

First, the ADA defines "disability" as, *inter alia*, "a physical or mental impairment that substantially limits one or more major life activities of [an] individual." 42 U.S.C. § 12102(1)(A). The ADA states that "hearing" is a major life activity. *Id*. § 12102(2)(A). In the Complaint, Crabbe alleges that she wears

_____

[9]As just discussed, arguably, the Complaint could be construed as alleging a hostile work environment. If that is the case, Crabbe may be alleging that she was harassed due to her disability, given that she alleges she was "ridiculed" in a meeting for not being able to hear and mixing-up patients. The Ninth Circuit, though, has not decided whether a hostile work environment claim can be brought under the ADA. *Brown v. City of Tucson*, 336 F.3d 1181, 1190 (9th Cir. 2003) (declining to decide whether a hostile work environment claim exists under the ADA); *Garity v. APWU Nat'l Labor Org.*, 655 F. App'x 523, 524 (9th Cir. July 5, 2016) (assuming without deciding such a claim exists). Even if such a claim did exist, Crabbe does not allege that being ridiculed at one meeting altered the conditions of her employment. *See Manatt v. Bank of Am., NA*, 339 F.3d 792, 798-799 (9th Cir. 2003) (concluding occasional racially insensitive incidents did not create a hostile work environment). Although Crabbe also asserts that she was harassed, as discussed earlier, that is all she says. There is no way to discern whether this alleged harassment altered the conditions of her employment. Thus, to the extent Crabbe intends to bring a hostile work environment claim under the ADA, she must clearly state that she is doing so and correct the deficiencies discussed earlier with respect to her possible Title VII version of the same claim.

hearing aids.   Wearing hearing aids alone does not necessarily mean that Crabbe is disabled, as her hearing without aids must still be substantially limited.   *See id.* § 12102(4)(E)(i)(I) (providing that "[t]he determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as … hearing aids").   Nonetheless, Crabbe further alleges that, when she was placed in a "noisy" office with three other people, she could not hear clients on the telephone and was ridiculed in a meeting for not being able to hear and mixing-up patients.   For present purposes, therefore, the Court assumes that Crabbe has alleged that she is disabled for purposes of the ADA.

Second, the ADA defines a "qualified individual" as someone "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."   42 U.S.C. § 12111(8). In the Complaint, Crabbe does not allege the essential functions of her job as a social services coordinator, but, it appears that talking to patients either over the telephone or in-person was an essential function.[10]   It is this function that Crabbe appears to have had a problem with when she was moved to a "noisy" office with three other people, as she alleges that she could not hear clients on the telephone and mixed-up patients.   Those allegations appear to suggest that Crabbe could not perform an essential function of her job *without* an accommodation.   Nonetheless, Crabbe

---

[10]Crabbe alleges "[m]ultiple new duties" were given to her in 2017, but does not allege what these duties were or whether they comprised essential function(s) of her job.

appears to allege that her hearing worked "fine" when she worked in a private office, and she did social services work for five years. The Court, therefore, assumes that Crabbe could perform the essential function of her job (of talking to patients) *with* the accommodation of working in a private office.

The only question is whether that accommodation was reasonable. The ADA does not provide an enlightening definition of "reasonable accommodation," providing, in pertinent part, that a reasonable accommodation may include "making existing facilities … usable by individuals with disabilities." 42 U.S.C. § 12111(9)(A). The EEOC's regulations add further that "[m]odifications or adjustments to the work environment" can be a reasonable accommodation. 29 C.F.R. § 1630.2(o)(1)(ii). Based upon these definitions and the allegations in the Complaint, use of a private office may be a reasonable accommodation as it is a change to the work environment that allowed Crabbe to perform the essential functions of her job. *See id*. This is especially so, given that Crabbe alleges she was provided a private office for five years. As such, it appears that Crabbe has alleged she is a "qualified individual" under the ADA.

Third, in the context of her disability, Crabbe appears to allege that she was discriminated against due to Palolo's failure to provide her with a reasonable accommodation, resulting in her working in an office where she could not hear and

mixed-up patients.[11]   As just discussed, Crabbe has alleged enough facts to suggest that working in a private office was a reasonable accommodation.   In addition, there are no facts alleged indicating that such an accommodation would cause an undue hardship for Palolo.   Thus, based on the current state of the alleged facts, Crabbe appears to have alleged that Palolo discriminated against her in failing to reasonably accommodate her alleged disability.[12]

As a result, the Court will not dismiss Crabbe's ADA claim against Palolo for failure to reasonably accommodate her alleged disability.   That being said, as discussed below, the Court has severe reservations regarding any failure to accommodate claim in light of the allegations Crabbe made in her administrative charge before the Equal Employment Opportunity Commission (EEOC).

---

[11]As discussed earlier in the context of Crabbe's race discrimination claim, she, arguably, alleges other discriminatory employment actions, including her termination.   It is far from clear, however, whether Crabbe means to bring an ADA discrimination claim based upon those actions. A more natural (but still equally liberal) reading of the Complaint is that her sole ADA claim is based upon a failure to accommodate.   That being said, the Court does not mean to foreclose the possibility that Crabbe means to bring other ADA discrimination claims.   If she so intends, though, she must make that clear in any amended complaint she may file.   For now, the Court will focus upon the ADA discrimination claim Crabbe clearly alleges: a failure to accommodate.

[12]The Court notes that there are other issues in this regard that are not specifically alleged in the Complaint, such as whether Crabbe informed Palolo of her need for an accommodation and whether Palolo offered her any other reasonable accommodation(s) for her alleged disability.   *See Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1188 (9th Cir. 2001)   As for notice, although Crabbe does not allege she informed her employer, from the totality of the allegations in the Complaint, the Court is willing to assume for now that Crabbe asked for a reasonable accommodation.   As for alternatives, the only suggestion the Complaint gives in this regard is that Crabbe was told to wear "ear muffs."   Obviously, that is not a reasonable accommodation for an employee who alleges she needed to talk to customers.   Thus, based on the allegations in the Complaint, the Court cannot say that a reasonable alternative accommodation was offered to Crabbe.

## D.   **ADEA**

The ADEA prohibits an employer from discharging an individual or otherwise discriminating against an individual with respect to compensation, terms, conditions, or privileges of employment because of the individual's age. 29 U.S.C. § 623(a)(1). To establish a prima facie case of discriminatory discharge under the ADEA, Crabbe must allege (1) she was at least 40 years of age, (2) she was adequately performing her job, (3) she was discharged, and (4) she was replaced by a substantially younger employee with equal or inferior qualifications. *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).[13]

Here, Crabbe alleges she was 62, and she was terminated. Therefore, she has alleged two of the pertinent elements. As with Crabbe's Title VII race discrimination claim, though, there are no allegations in the Complaint that she was performing her job adequately. As for the fourth element, Crabbe does not allege that Palolo replaced her when she was terminated, much less by "a substantially younger employee with equal or inferior qualifications."

As a result, Crabbe's age discrimination claim with respect to her discharge is DISMISSED WITHOUT PREJUDICE. Crabbe may file an amended complaint that addresses the deficiencies in her age discrimination claim, described above.

---

[13]The Court notes that *Diaz* also states that, in cases involving a reduction in force, the fourth element can be established by "circumstances otherwise giving rise to an inference of age discrimination." *Diaz*, 521 F.3d at 1207 & n.2. Here, Crabbe does not allege that her termination resulted from a reduction in force. Therefore, "[g]enerally," she must allege that she was replaced by a substantially younger employee. *See id*. at 1207 n.2.

Should she do so, she must allege, for instance, whether she was adequately performing her job when she was terminated. She must also allege whether she was replaced by a substantially younger employee with equal or inferior qualifications. As such, if she can, Crabbe must allege her qualifications, the qualifications of the person who replaced her, and the age of the person who replaced her.[14]

### E. **FMLA**

Liberally construing the Complaint, it appears fairly clear that Crabbe intends to allege a claim related to her taking FMLA leave. Specifically, she alleges that: "I was treated differently since returning earlier 2017 from personal medical FMLA." It, thus, appears that Crabbe is alleging that she was treated differently for taking FMLA leave. Such an allegation constitutes a claim for interference with rights provided by the FMLA. *See Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001) (explaining that "negative consequences" for an employee using FMLA leave are covered by the anti-interference provision of the

---

[14]As discussed earlier with respect to Crabbe's Title VII race discrimination claim, arguably, she alleges other adverse employment actions, such as the increase in her workload. It is entirely unclear, however, with respect to which of her claims these other actions are meant to relate. For present purposes, even liberally construing the Complaint, none of the actions appear related to Crabbe's age. To the extent Crabbe intends to allege that she suffered adverse employment actions (other than her termination) because of her age, Crabbe should make that clear in any amended complaint she may file.

FMLA, rather than the anti-retaliation provision).   It is with that understanding of the Complaint that the Court addresses Crabbe's FMLA claim.[15]

To prevail on a claim of interference for using FMLA leave, Crabbe must "prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her" or in another employment decision, such as promotions or disciplinary actions.   *See id.* at 1125; 29 C.F.R. § 825.220(c).

Here, it is not clear whether Crabbe has alleged she took FMLA-protected leave.   Crabbe certainly asserts that she took FMLA leave and alleges the leave was for "personal medical" reasons.   Thus, it appears she relies upon protected leave due to "a serious health condition that makes the employee unable to perform the functions of the position of such employee."   *See* 29 U.S.C. § 2612(a)(1)(D). Crabbe does not allege, though, the nature of her "personal medical" leave.   As such, it is not possible to assess whether her medical issue constituted a "serious health condition" under the FMLA or whether it rendered her unable to perform the functions of her job.

Assuming Crabbe can allege that she engaged in FMLA-protected leave, at this juncture, Crabbe appears to have alleged enough facts suggesting that using leave was a negative factor in her termination.   That being said, it is certainly not

_____

[15]However, as the Court has stated numerous times in this Order with respect to other claims, to the extent Crabbe intends to allege a different claim under the FMLA or even a claim for retaliation under some other statute, she must clearly state such intent in any amended complaint she may file.

clear whether Crabbe is trying to allege whether the other actions that allegedly befell her, such as the increase in her workload, are meant to be considered as distinct events that interfered with her FMLA rights or as circumstantial evidence that her leave was a negative factor in her termination. *See Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1136-37 (9th Cir. 2003) (explaining that an interference claim can be established with circumstantial evidence, such as temporal proximity and post-leave drop in evaluation scores). Assuming it is the latter, Crabbe's allegations suggest that the conditions of her work changed after she took leave and these changes may have resulted in her termination.[16] For present purposes, that would be enough to move forward if Crabbe had alleged facts indicating she was on FMLA-protected leave.

Because she has not, her apparent claim of interference with FMLA rights against Palolo is DISMISSED WITHOUT PREJUDICE. Crabbe may file an amended complaint, amending her FMLA interference claim against Palolo. Should Crabbe do so, she must allege facts indicating that she used FMLA-protected leave prior to being "treated differently" as she alleges in the Complaint. So this claim is clearer, Crabbe should also state whether Palolo interfered with her FMLA

---

[16]The Court notes that, at the very end of her allegations, Crabbe states that she was fired before returning to work. This may suggest that Crabbe was on some form of leave when she was terminated, especially seeing as it appears that Crabbe was terminated after she fell. Nevertheless, it is unclear whether this allegation may have any effect on Crabbe's FMLA interference claim or whether it suggests another species of FMLA claim, given the complete lack of context provided.

rights by terminating her or whether some other action(s) by Palolo interfered with her FMLA rights.   In addition, Crabbe should also allege whether she was on FMLA-protected leave when she was terminated.

Finally, unlike Title VII, the ADA, and the ADEA, a plaintiff can bring claims under the FMLA against individuals.   *See Andreatta v. Eldorado Resorts Corp.*, 214 F. Supp. 3d 943, 954 (D. Nev. 2016) (citing 29 U.S.C. § 2611(4)(A) and finding that the FMLA reaches individuals, but dismissing most of the individuals named as defendants in that case due to a lack of factual allegations related to them); 29 U.S.C. § 2611(4)(A) (defining "employer" as including "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer"). Nonetheless, here, any FMLA claims Crabbe may bring against the individual defendants must be DISMISSED because, other than naming the individual defendants, Crabbe makes no factual allegations concerning them, let alone factual allegations concerning their involvement in leave under the FMLA.

However, because amendment may be able to cure this deficiency, Crabbe's claim(s) under the FMLA against the individual defendants (if any) are DISMISSED WITHOUT PREJUDICE.   Crabbe may file an amended complaint, amending any FMLA claim she wishes to bring against the individual defendants.   To the extent any individual defendant is named in the amended complaint, Crabbe must allege facts related to that individual defendant's involvement in the alleged denial of

Crabbe's FMLA rights.   So it is clear, merely being on Palolo's board of directors is not enough for any such person to be named in any amended complaint Crabbe may file.

### F.    **Administrative Exhaustion**

The Court has addressed those claims that a liberal reading of the Complaint suggests Crabbe may have intended to bring, including claims under Title VII, the ADA, the ADEA, and the FMLA.   Attached to the Complaint is the Charge of Discrimination Crabbe filed with the EEOC.   Dkt. No. 1-2.   Title VII, the ADA, and the ADEA each requires that a plaintiff exhaust administrative remedies prior to filing a civil action.[17]   42 U.S.C. § 2000e-5; 29 U.S.C. § 626; 42 U.S.C. § 12117(a). One aspect of administrative exhaustion is that "[s]ubject matter jurisdiction extends over all allegations of discrimination that either fell within the scope of the EEOC's actual investigation or an EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."   *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002) (quotation and emphasis omitted).

At this present juncture, the Court does not intend to *sua sponte* determine whether each and every one of the claims that may liberally be construed from the Complaint were administratively exhausted.   The Court will offer, however, that in any amended complaint Crabbe may file, she should only bring those claims that she

---

[17]The FMLA does not expressly require a plaintiff to exhaust administrative remedies.   *Arthur v. Constellation Brands, Inc.*, 2016 WL 6248905, at *2 (N.D. Cal. Oct. 26, 2016) (citing 29 U.S.C. § 2617); *Bonzani v. Shinseki*, 2011 WL 4479758, at *5 (E.D. Cal. Sep. 26, 2011).

actually alleged in her Charge of Discrimination or which could reasonably be expected to grow out of the Charge of Discrimination. Crabbe should <u>not</u> bring claims that are contradicted by the allegations made in her Charge of Discrimination.[18]

### G. Limited Leave to Amend

To the extent set forth above, Crabbe may amend her complaint to cure the deficiencies that have been identified in this Order. More specifically, Crabbe is granted leave to amend her claims under Title VII, the ADEA, and the FMLA against Palolo, and her claims under the FMLA against the individual defendants. Crabbe may <u>not</u> re-allege any claims against the individual defendants under Title VII, the ADA, or the ADEA.

If she so chooses, Crabbe need not amend her failure to accommodate claim under the ADA against Palolo. That being said, in light of the Court's discussion in footnote 18, Crabbe may wish to amend that claim. Whatever course Crabbe chooses, if she intends to proceed with a failure to accommodate claim under the

---

[18]For example, in the Complaint filed in this action, Crabbe alleges that Palolo "fail[ed] to accommodate my hearing deficit by taking me out of the private office I had for four years and forced me to work in noisy office with 3 coworkers." In her Charge of Discrimination, though, Crabbe alleged that she requested a reasonable accommodation on July 6, 2017 "for a recently diagnosed disability" and, on July 12, 2017, she met with Palolo which "eventually provided me accommodations for my disabilities, including a relocation [ ] to another office space." Nowhere in the instant Complaint can it even be inferred that Crabbe's alleged disability was "recently diagnosed" or that Palolo provided her any accommodation. In fact, the opposite is alleged. Going forward, Crabbe is forewarned that such clearly contradictory allegations will be more closely scrutinized and may result in claims being dismissed, including her failure to accommodate claim under the ADA.

ADA, she must re-allege such a claim in any amended complaint she may file. This is because Crabbe may not incorporate any part of her original complaint, Dkt. No. 1, in her amended complaint. Rather, all claims and all allegations must be re-typed or re-written in their entirety. To the extent any claims are not re-alleged in an amended complaint, they may be deemed voluntarily dismissed. *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) (stating that claims dismissed with prejudice need not be re-alleged in an amended complaint to preserve them for appeal, but claims that are voluntarily dismissed are considered waived if they are not re-pled). In addition, with respect to her failure to accommodate claim, Crabbe should take note of the Court's discussion in footnote 18. In other words, Crabbe should only re-allege that claim if it is consistent with the allegations she made before the EEOC in her Charge of Discrimination.

Finally, while the filing of any amended complaint and subsequent review thereof is pending, the Court stays service on Palolo.

### III.   <u>Amended Motion for Appointment of Counsel</u>

Crabbe has also moved for appointment of counsel in this case. There is no constitutional right to the appointment of counsel in employment discrimination cases. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 269 (9th Cir. 1982). In addition, even if the Court indicates an intention to seek appointment of counsel,

there is no guarantee that any attorney on the Civil Pro Bono Panel for this District will accept appointment. *See* Rule 3(D) of the Rules for Civil Pro Bono Panel for the U.S. Dist. Ct. of Haw. (providing that an attorney selected may accept or decline appointment within ten days of notice).

Courts generally consider the following three factors in determining whether to appoint counsel: "(1) the plaintiff's financial resources; (2) the efforts made by the plaintiff to secure counsel on his or her own; and (3) the merit of the plaintiff's claim." *Johnson v. U.S. Treasury Dep't*, 27 F.3d 415, 416-417 (9th Cir. 1994). A plaintiff has the burden of persuasion as to all three factors, and an unfavorable finding as to any one factor may be fatal to the request. *See Williams v. 24 Hour Fitness USA, Inc*., 2014 WL 7404604, at *2 (D. Haw. Dec. 30, 2014). "The decision to appoint counsel is left to the sound discretion of the district court." *Johnson*, 27 F.3d at 416.

Here, as discussed earlier, Crabbe has shown a lack of financial resources at this time to pay for an attorney's services up front. In the amended motion, Crabbe also states that she has contacted six attorneys to represent her in this action, and she appears to state that she has not been able to come to an agreement with any of them on terms she can afford. She does not state, though, the terms any of the attorneys have proposed, including whether a contingency fee arrangement has been discussed. Perhaps more important, it does not appear that Crabbe has attempted to

contact free legal services such as those provided by Volunteer Legal Services Hawaii or other referral services in the local legal community. As a result, on the present record, the Court finds that Crabbe has not made a reasonably diligent effort under the circumstances to obtain counsel. *See Williams*, 2014 WL 7404604, at *3 (finding that the plaintiff did not make reasonably diligent efforts where he contacted seven attorneys, and generally asserted that he was unable to find an attorney willing to represent him on terms that he could afford). Finally, at this early juncture in the case, where the Court has dismissed all but one of Crabbe's potential claims and the one claim the Court has not dismissed appears to contradict the Charge of Discrimination, the Court does not find that this action is presently sufficiently meritorious to warrant appointment of counsel.

Therefore, with two of the three factors not supporting appointment, the Court declines to refer Crabbe for appointment of counsel and DENIES her amended motion.

## IV.  <u>Conclusion</u>

Crabbe's application to proceed *in forma pauperis*, Dkt. No. 2, is GRANTED. Crabbe's motion for appointment of counsel, Dkt. No. 3, is DENIED AS MOOT. Crabbe's amended motion for appointment of counsel, Dkt. No. 8, is DENIED.

The Complaint, Dkt. No. 1, is DISMISSED WITH PREJUDICE with respect to all claims against the individual defendants under Title VII, the ADA, and the ADEA.

The Complaint, Dkt. No. 1, is DISMISSED WITHOUT PREJUDICE IN PART with respect to (i) all claims against Palolo Chinese Home under Title VII, the ADEA, and the FMLA, (ii) any claim under the ADA against Palolo Chinese Home except for Crabbe's failure to accommodate claim, and (iii) any claims under the FMLA against the individual defendants.

Crabbe may have until **December 17, 2018** to file an amended complaint to the extent allowed herein. **The Court cautions Crabbe that failure to file an amended complaint by December 17, 2018 may result in the dismissal of those claims that the Court has only thus far dismissed without prejudice in this Order.**

IT IS SO ORDERED.

Dated: November 14, 2018 at Honolulu, Hawai'i.

Derrick K. Watson
United States District Judge

*Gail Lynn Crabbe v. Darlene Nakayama, et al.;* Civil No. 18-00418 DKW-KJM; **ORDER (1) GRANTING APPLICATION TO PROCEED WITHOUT PREPAYMENT OF FEES OR COSTS; (2) DISMISSING COMPLAINT WITH PARTIAL LEAVE TO AMEND; (3) DENYING AS MOOT MOTION FOR APPOINTMENT OF COUNSEL; AND (4) DENYING AMENDED MOTION FOR APPOINTMENT OF COUNSEL**